AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>Black Apple iPhone<br>Model: Unknown<br>Seized as FP& F: 2024255400019801 Item: 0005</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   24MJ8793</td></tr>
</table>

**FILED**

Sep 10 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ VeronicaCota          DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's  signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:   9/9/2024

*Judge's signature*

City and state:  El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone
                Model: Unknown
                Seized as FP& F: 2024255400019801 Item: 005
                Seized from Branden Johnathan GAMEZ
                **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 20, 2024, up to and including August 20, 2024, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### INTRODUCTION

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          Black Apple iPhone
              Model: Unknown
              Seized as FP& F: 2024255400019801 Item: 005
              Seized from Branden Johnathan GAMEZ
              **(Target Device #1)**

**A-2:**          Red Samsung Cellphone
              Model: Unknown
              Seized as FP& F: 2024255400019801 Item: 004
              Seized from Eliel MENDOZA-Juarez
              **(Target Device #2)**

**A-3:**          Gray Motorola Cellphone
              Model: Unknown
              Seized as FP& F: 2024255400019801 Item: 003
              Seized from Jose REYES-Villa
              **(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Branden Johnathan GAMEZ (GAMEZ) for transportation of illegal aliens Eliel MENDOZA-Juarez (MENDOZA) and Jose REYES-Villa (REYES) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from GAMEZ and the Material Witnesses on or about August 19, 2024, incident to the arrest of GAMEZ and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border

Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of

California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text

messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10.    On August 19, 2024, the Calexico Station's Anti-Smuggling Unit was conducting surveillance approximately 18 miles east of the Calexico Port of Entry. At approximately 6:52 p.m., BPA A. Pena observed two suspected illegal aliens traveling north toward the All-American Canal (AAC). The two suspected illegal aliens were traveling approximately one and a half miles east of "Drop 3" on the southern bank of the AAC. BPA A. Pena continued surveillance as the two suspected illegal aliens made their way north, walked down into the AAC, swam north through the AAC, and ran north of the AAC. BPA A. Pena relayed this information to ASU members via service radio.

11.    The two suspected illegal aliens continued running north until they reached the southern shoulder of Highway 98 where they hid in large brush, approximately 20 feet south of Highway 98. BPA D. Nunez continued surveillance of the two suspected illegal aliens as they remained hidden before they ran north towards Highway 98.

12.    Simultaneously, BPA D. Nunez observed a black pick-up truck, later identified as a black Chevrolet Silverado bearing California plates, traveling westbound on Highway 98 at a high rate of speed near the location of the two suspected illegal aliens. The two suspected illegal aliens ran to the north side of Highway 98 and the Chevrolet came to an abrupt stop west of the two suspected illegal aliens. BPA D. Nunez then observed the two suspected illegal aliens run towards the Chevrolet and board the rear passenger area of the Chevrolet.

13.    The Chevrolet merged back onto the westbound lane of Highway 98 and traveled westbound for approximately one mile before conducting a u-turn to travel eastbound on Highway 98. Supervisory BPA Schwaderer, operating an unmarked service vehicle and wearing plain clothes attire, was able to witness the Chevrolet conduct this maneuver. BPA Palmer observed the Chevrolet reach the intersection of Interstate 8 (I-8) and Highway 98 and traveled north on the overpass and merged onto the westbound lanes of I-8. Agents followed the Chevrolet for approximately five and a half miles before SBPA Schwaderer caught up to the Chevrolet. The Chevrolet slowed down to the point where

SBPA Schwaderer had to pass the Chevrolet. BPA Palmer and SBPA Schwaderer continued to follow the Chevrolet as it was traveling westbound and initiated a vehicle stop on the Chevrolet. The Chevrolet slowed down and pulled over to the northern shoulder of I-8.

14.     BPA Palmer approached the passenger side of the Chevrolet and identified himself as a Border Patrol Agent. Through the front passenger window, BPA Palmer observed the driver of the Chevrolet, GAMEZ, and two rear seat passengers. BPA Palmer noticed the rear seat passengers were laying down one on top of the other. BPA Palmer questioned GAMEZ regarding his citizenship. GAMEZ stated he was a United States Citizen. SBPA Schwaderer, who was approaching the driver side of the Chevrolet, ordered GAMEZ to exit the vehicle to which GAMEZ complied. SBPA Schwaderer escorted GAMEZ to the rear passenger area of BPA Palmer's service vehicle. BPA Palmer then questioned the two rear passengers, later identified as Eliel MENDOZA-Juarez and Jose REYES-Villa, regarding their citizenship. MENDOZA and REYES stated they were citizens and nationals of Mexico without the proper documentation to be in the United States legally. BPA Palmer placed MENDOZA and REYES under arrest.

15.     At that moment, SBPA Schwaderer informed GAMEZ he was under arrest. After placing GAMEZ under arrest, BPA CHRISLEY searched the Chevrolet for any contraband and noticed a small cardboard box filled with 9MM ammunition. BPA CHRISLEY informed SBPA Schwaderer of the ammunitions box and SBPA Schwaderer asked GAMEZ if any weapons were in the Chevrolet. GAMEZ stated there was a handgun inside a lockbox located on the passenger seat of the Chevrolet. Upon discovery of the lockbox, located on the front passenger's seat within reach of the driver, SBPA Schwaderer asked GAMEZ for consent to open the lockbox. GAMEZ also gave the code to SBPA Schwaderer. Inside the lockbox, SBPA Schwaderer discovered a black sub-compact Springfield Armory XD-9 9MM handgun. The handgun had a magazine inserted with nine 9MM rounds. GAMEZ claimed ownership of the handgun and the ammunition. The handgun was seized by SBPA Schwaderer, and it was transported to the Calexico Border

Patrol Station. GAMEZ, MENDOZA and REYES were transported to the Calexico Border Patrol Station for further processing and interviews.

16.     Material Witness MEDONZA-Juarez stated he personally made the smuggling arrangements. MENDOZA stated that he was going to pay $9000 USD to be smuggled to Los Angeles, California. MENDOZA stated he was instructed to climb the IBF using a ladder made of rope. MENDOZA stated he was instructed to run straight north until he came across a canal. MENDOZA stated he was instructed to swim across the canal while wearing a life vest that was given to him. MENDOZA stated he was instructed via phone to go straight towards the first road after swimming across the canal and wait for a black pick-up. MENDOZA stated once the black pick-up arrived, he ran towards the vehicle and boarded the black pick-up.

17.     Material Witness REYES-Villa stated he was deported approximately four days ago. REYES stated he was staying in Tijuana. REYES stated he made the smuggling arrangements. REYES stated he was going to pay $9000 USD to be smuggled to Los Angeles, California. REYES stated on today's date he was instructed to climb the IBF using a ladder made of rope. REYES stated he was instructed to go straight until he came across a canal. REYES stated he was instructed to swim across the canal wearing a life vest that was given to him. REYES stated he was instructed via phone to go straight towards the first road he came across. REYES stated he was instructed to wait for a black pick-up that would pick him up. REYES stated once the black pick-up arrived, he ran towards the vehicle and boarded into the black pick-up.

18.     During a search incident to arrest of GAMEZ and the Material Witnesses, three cellphones were found: a black Apple iPhone (Target Device #1) was located by Agent Palmer in the center console of the Chevrolet and GAMEZ claimed ownership of this cellphone. A gray Motorola cellphone (Target Device #2) was located in REYES' front right pocket and REYES claimed ownership of this cellphone. A red Samsung cellphone (Target Device #3) was found by Agent Palmer in MENDOZA's front left pocket and MENDOZA claimed ownership of this cellphone. All cellphones were seized as evidence.

19.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on July 20, 2024, up to and including August 20, 2024, the day after the arrest of GAMEZ and the Material Witnesses.

**METHODOLOGY**

20.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1

**CONCLUSION**

2      23.    Based on all the facts and circumstances described above, I believe that

3  probable cause exists to conclude that GAMEZ and the Material Witnesses used the Target

4  Devices to facilitate the offense of alien smuggling. The Target Devices likely were used

5  to facilitate the offense by transmitting and storing data, specifically that described in

6  Attachment B, which constitutes evidence of violations of Title 8, United States Code,

7  Section 1324. I also believe that probable cause exists to believe that evidence of illegal

8  activity committed by GAMEZ, the Material Witnesses, and others continues to exist on

9  the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

10      I swear the foregoing is true and correct to the best of my knowledge and belief.

11

12                              *Fernando Quiroz*
                                Fernando Quiroz Border Patrol Agent

13                              United States Border Patrol

14
       Attested to by the applicant in accordance with the requirements of Fed. R. Crim.
15  P. 4.1 by telephone on this 9th day of September, 2024.
16

17                                 3:48 p.m.

18  HON. LUPE RODRIGUEZ, JR.
    UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**              Black Apple iPhone
                    Model: Unknown
                    Seized as FP& F: 2024255400019801 Item: 005
                    Seized from Branden Johnathan GAMEZ
                    **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**             Red Samsung Cellphone
                Model: Unknown
                Seized as FP& F: 2024255400019801 Item: 004
                Seized from Eliel MENDOZA-Juarez
                **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**            Gray Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400019801 Item: 003
Seized from Jose REYES-Villa
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 20, 2024, up to and including August 20, 2024, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.